Good morning. Please begin your argument. Thank you, Your Honor. May it please the court, counsel. Judge, this case involves my client's two most important arguments that he was denied a fair trial in this case because he was first, the District Court failed to allow him to present the South Dakota codified law regarding what's called a suspended imposition of sentence and a suspended execution of sentence, and secondly, that he was denied the ability to have a public defender by the name of Alicia Fuller testify at trial as to the South Dakota laws regarding suspended impositions of sentence. In 922G, the main focus is the word convicted. Convicted of a crime exceeding one year, and with the recent case in rehalf, if I'm pronouncing that correctly, the main issue is the knowledge of the defendant. Now when we look to 921 sub 20, we determine that what is a conviction is determined by the state law of the state where the action occurred, and to determine what a conviction was, this court in the past, in the Davies case, looked to the Iowa statutes regarding deferred impositions of judgment in deciding that a person wasn't convicted because of the statute in Iowa, and similarly here, Mr. Walking Bull sought to present to the court or to the jury information regarding the suspended imposition of sentence in South Dakota. The way South Dakota works is that you may be convicted, or you may enter a plea, excuse me, but not be convicted under a suspended imposition of sentence, and the process is that once you complete probation or whatever terms are required, you are discharged under that statute, and you can honestly answer by statute that you were never stopped for, arrested for, charged with, or convicted of any crime. Counsel, this is Judge Smith, what's the significance of that when the probation is revoked and he's ultimately sentenced on the felony? When you were issued a suspended imposition of sentence, there's a thing called an order of discharge, and that order of discharge would give you back all of your rights. The difference is when he was revoked, he essentially went to prison and received essentially a time-served disposition because in South Dakota, ten years isn't ten years, you serve a short period of it, but he received what's called a certificate of discharge, and that certificate of discharge, most clients believe, is an order of discharge, and they believe that that gives them all of their rights back. And in fact, I just had a trial the other week where one of the jurors said, I received my certificate of discharge and I have my rights back, because they simply don't understand the difference between an order of discharge and a certificate of discharge, the difference between a suspended execution of sentence and a suspended imposition of sentence, and in this case, probably the most important thing that the jury should have heard is that this defendant never received his judgment. In operation in Pennington County, after a person is sentenced, they're immediately taken to the prison, and sometime later, the state's attorneys prepare the judgment, and that judgment is reviewed between defense counsel and... So counsel, are you saying he was never aware that he was sentenced to four years? He may have attended sentencing, and he was sentenced, but in operation, he doesn't know the suspended imposition of sentence. If he thought he was getting four years, his time had already expired for his parole eligibility, so essentially he's getting a time-served disposition and being kicked out of the prison without even being there, except for there's a unique provision regarding a mandatory minimum time, and he's receiving an order of a certificate of discharge, and he has never received his judgment, and that's what Alicia Fuller could have testified to, is that the paperwork of what he was convicted of, or what he was sentenced to, never gets to him. That's standard process in that office. It is not forwarded to the person, so it is possible, and probably probable, that he did not understand at the time of sentencing what it is that he received, and I guarantee that nobody sat down afterwards and explained to him, okay, you were sentenced on a suspended execution, here's what an execution is, here's all of this stuff. For the most part, people are taken from the courtroom, they're sentenced by the judge, under, you know, under very tense circumstances, and they're sent to a prison with no documentation following up saying what they are. Even if he had been sentenced and understood that, when he received his certificate of discharge, when he left the prison, which that's what most of these people think, they know that under South Dakota law, at some point, your gun rights are restored. A lot of people think that that's immediately upon your off probation, but it depends. It could be five years, it could be 15 years, but when people receive the certificate of discharge in South Dakota, they believe that their gun rights are restored, and it's been a long-standing problem that we need to clarify the language between the certificate of discharge handed to them, and an order of discharge which is on a suspended imposition of sentence. That may be something North Dakota may choose to do, but in terms of what the rehafe requirement is, it only requires that the defendant know that he's been sentenced to an offense that, a felony offense that imprisons him, or that would convicted. And under the suspended imposition of sentence, your conviction, you are not convicted of the crime. So most people who get suspended imposition of sentence believe, because that's the way the statute works, and the wording of it, and I'll read it directly to you, is the effect of such order is to restore such person in the contemplation of the law to the status he occupied before his The person to whom such order has been entered shall be, therefore, under any provision of law to be guilty of perjury or giving a false statement by reason of failure to recite or acknowledge an arrest, indictment, information, or retrial in response may fail the purpose. The people that we deal with in the criminal justice system understand that your rights can be restored. They understand that there's a suspended imposition of sentence. They understand that he's not a sophisticated client, and I don't know what was in his head, and I don't know what he thought when he received a certificate of discharge. But at a bare minimum, since the Rehave case focuses on what his intent was, in that case we were dealing with an individual who said, well, how could you not know that you're an illegal immigrant? Well, you bring in all of these people from the Bureau of Immigration Appeals, and you talk about the process, and you explain to them the process of how this works and what goes on, and then the jury can make a determination of whether that's reasonable. And in this case, he sought to have a public defender come in and present to the jury not only the law regarding suspended impositions, suspended executions, the certificate of discharge, the order of discharge, he sought to present evidence to the jury about whether that would be reasonable to assume, and he was denied that right. He was denied the right to present any evidence, essentially, regarding the South Dakota law as it lists under 921 sub 20. Do you have any 8th Circuit cases indicating the explain what the law is? In the United States versus Davies, that's an 8th Circuit case, you were dealing with the issue of the Iowa deferred sentence, and whether a person is essentially, in that case, the 8th Circuit reversed, saying he may have pled guilty, but under that process, he wasn't convicted. And, you know, that's a very complicated statute as well, but I think the jury should have the same availability of understanding or being presented as to what the South Dakota law was regarding these and the things that he believed. And there was simply no way to get that information. If it's an element of the crime which is intent and knowledge, and knowledge that he did that, then he should be able to explain to the jury why a person might believe or might not believe or not even understand what it is. I find that a lot of people even practicing as attorneys do not understand the difference between a suspended execution of sentence in South Dakota and a normal sentence. Legal trained people are not able to differentiate these complicated sentences and procedures that South Dakota has, and the average person in South Dakota is not able to tell you that your rights are restored, your gun rights are restored, they just simply don't know when that is because there's a tier of these different things. And so for him to believe that his gun rights were restored is extremely reasonable, and I also should have had that information regarding what the South Dakota Department of Corrections process was, because in his case, despite the fact that he was convicted and sentenced, with his time serving parole eligibility, he would essentially just walk right out the door. And in those cases, it's pretty, the jury needs to understand why it is that this stuff happens, and the documents that they receive. I think probably the most important thing is that he wasn't presented with the ability to explain that he didn't receive his judgment. And that's key to this entire case. The jury should, at a bare minimum, know, I mean, you can assert that, but the average person would be like, that's not possible. But Alicia Fuller could have fully explained, this is why he didn't receive his judgment, nor does everybody else. I'll reserve the rest of my time. Thank you, Mr. Roche. Mr. Patterson. Thank you, Your Honor. May it please the court. Your Honors, my name is Benjamin Patterson. I am an assistant United States attorney from the District of South Dakota, representing the United States in this case. Following a jury trial and verdict, the defendant was found guilty of the single count in the indictment, charging possession of a firearm by a prohibited person, in violation of 18 United States Code section 922 G1. I will track the arguments as set forth by appellant's counsel, but of course, we'll answer any questions the court has on any of these issues. I think, Your Honor, the United States believes it is very important for this court to consider what was offered and what was argued at the trial level versus what is being argued by appellant's counsel in his brief, because they are vastly different things. As noted in Docket 54 of the record, which is the defendant's notice of intent to use an expert witness, the indication with regards to the testimony was that that expert would explain the content and force of South Dakota statutes as they pertain to the allegations against the defendant, but would not offer any opinions as to the knowledge or belief of Mr. Walking Bull. In this case, Your Honor, the United States argued in its motion to exclude that expert, one, that the notice was deficient. It was filed 36 hours before trial started. The court would have excluded that on that basis alone as indicated by the record, but also that it was insufficient in that it didn't explain what the expert's understanding of South Dakota law was, what her understanding was with regards to suspended imposition of sentences. It simply indicated that she would testify to that. It is important in this case to understand that Ms. Fuller, the proposed expert, did not represent Mr. Walking Bull in state court. There was no evidence presented at trial or proffered by defense counsel that Mr. Walking Bull never received his judgment. Additionally, the judgment is very clear. We're talking here about suspended imposition and suspended execution of sentences, but that is not the final document in this case. Both the defendant's suspended imposition and suspended execution of sentences were revoked and final judgment was entered by the Seventh Judicial Circuit, indicating that the defendant was present at that hearing. He was represented by competent counsel, that he was being found guilty of possession of a controlled substance, indicating it was a Class 4 felony, that he was sentenced to four years in custody with one suspended, and that he was advised of the maximum penalty on that charge, which was 10 years custody. Whether or not he later received a judgment to confirm all of that does not go to whether or not he understood or knew at the time he was sentenced and explained all of that by the circuit court judge, that he was in fact guilty of a felony conviction, punishable by more than one year in custody. And furthermore, the judgment indicates that the circuit court judge asked the defendant if there was any legal cause to show why the judgment should not be pronounced, and none was offered. And so the United States believes, based on the abuse of discretion standard applicable in this case, that the court should affirm the district court judge's exclusion of that expert witness on that basis alone. Additionally, your honor, under the federal rules of evidence, as well as case law established by this court and others, the proposed testimony, which was simply an explanation of South Dakota statutes, was not appropriate. Under this court's ruling in United States v. Benton in 2018, a certain case cited in the government's brief, it indicates that expert testimony on legal matters is not admissible. This court has also said that a court may properly exclude an expert's proffered testimony if it amounts to instructing the jury on the law, because that is the function of the court. The appellant expands the argument beyond what was proposed at the district court level in the notice of expert and argued by trial counsel by now arguing that not only should that expert have been allowed to testify regarding the South Dakota statutes, but also with regards to the defendant's knowledge of what he would have known at the time he was sentenced. That is improper. Under Rule 704, an expert cannot testify to whether a defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. And in this case, that's exactly what defense appellate's counsel is asking this court to do is to permit an expert to go back and to testify as to what defense counsel would have, excuse me, the defendant would have known at the time of trial. And the district court specifically had that discussion with trial counsel on the record at the motions hearing that he was not going to permit an expert to testify to what a defendant understood because that was left to the discretion of whether or not that defendant chose to testify. In this case, the defendant chose not to testify, as was his right. But the district court did not err or abuse its discretion in denying the expert from testifying. The second part of that, Your Honors, goes to the jury instructions which were proposed by defense counsel with regards to a suspended imposition of sentence and the minimum time that a first-time non-violent offender must serve in custody following a conviction. In this case, there was a lengthy discussion at trial with regards to the minimum time a first-time non-violent offender must serve in custody. During that bench conference, the bench conference started because the United States objected to the line of questioning to the government's case agent who was on cross-examination. The court held or inquired of defense counsel at the time whether or not he knew how much time the defendant had served in custody based on the judgment. Defense counsel indicated that he did not know how much time he had spent in custody, that the agent did not know how much time he had spent in custody. The district court found that it was a confusion of the issues and not relevant given the element that the United States has to prove under Prehoff and excluded it on that basis because it was simply throwing out to the jury a statute which there was no basis or facts to support or surround. We believe the district court properly excluded that as well. With regards to the suspended imposition, despite the fact that it was not the final judgment in the case, defense counsel at trial did cross-examine the case agent about what a suspended imposition of sentence was. The case agent explained what it was, that it was not considered a conviction if a defendant abided by all the conditions that were set out in the suspended imposition of sentence. But in this case, that suspended imposition of sentence was revoked. The defendant was sentenced to four years in custody with one suspended. I would also note, your honor, that with regards to the jury instructions, much of again what is argued by defense counsel or appellant's counsel on appeal is in stark contrast to what was argued below. The only two jury instructions that were offered by defense counsel was on the suspended imposition of sentence and the minimum time a first-time nonviolent offender must serve in custody. And again, there was no evidence presented about how much time he had served in custody beyond what was found in trial exhibit five, which was the final judgment in this case, indicating the defendant received a four-year custody sentence with one suspended and was advised that the maximum penalty was ten years. So there was no evidence with regards to the time the defendant spent in the penitentiary. All this communication about contact with the Department of Corrections and how long they served when they are given a credit for time served was not part of what was argued down below or proffered by defense counsel down below. What the defendant was told by his attorney. Well, Ms. Fuller wasn't his attorney. There was no evidence as to what he was told by an attorney following his conviction. That he never received the judgment. Again, none of these are elements that the United States had to prove, but it's certainly not evidence that Ms. Fuller, the proposed expert, had knowledge about with regards to this specific case or at least that was proposed by defense counsel with regards to what knowledge she did have. With regards to the other issues presented by defense counsel, he argued about the jail calls that were presented to the district court or that were presented through a motion in limine to exclude. In that case, your honor, the district court, despite what's contained in the appellant's brief, found that the calls were not late, that they were not a violation of Rule 16, and that all of them were provided and that they were relevant as a statement against interest. I have a question about that. Isn't it true that the recordings were withheld from the defendant until after the deadline had passed for producing recordings? Your honor, we provided those recordings within days of receiving them. They were requested by the United States on October 14th. But you knew that there was a deadline for producing recordings and you didn't request them until after the deadline had passed, as I understand the record. Well, I suppose that's accurate, your honor. The call that was offered by the United States at trial was made on October 13th, 2019, which was also past the deadline for providing recordings. So to say that that's a hard and fast deadline, which I don't believe is accurate, that deadline relates to those documents and those recordings within the possession of the United States at the time of that deadline, which there were none. We provided them as soon as we had received them. The call that was made the day before they were requested, to say that a defendant has until that date and they can make whatever incriminating statements they want to after that date because the United States can no longer use them, I don't think is what was intended by the district court's ruling with regards to the date that recordings should have been disclosed. Those, again, would apply to recordings within the possession of the United States at that time, which these were not. It looks like Mr. Patterson's signal is frozen. Madam Clerk, could you contact Mr. Patterson to have him sign back in? Oh, there we go. In this case, Your Honor, the prejudicial impact argued by defense counsel at trial was the language, the foul language used in the jail calls. And now it is expanded to include the fact that in the appellant's brief indicates that defense counsel, trial counsel was 200 miles away from where the case was tried, but that's not true. Your Honor, trial counsel was the assistant federal public defender. He was 0.2 miles from the courthouse, 0.5 miles from where the defendant was being held at the Pennington County Jail during the entirety of his pretrial detention pending trial. And additionally, again, the court found that they weren't late, specifically found that they were not late, and that's on pages 11 and 12 of that motion hearing, and that they were not in violation of Rule 16, and found that they were relevant as a statement against interest. And then finally, Your Honors, with regards to the sufficiency of the evidence, again, this court reviews that de novo and views the evidence in light most favorable to the verdict, giving it the benefit of all reasonable inferences. It does not resolve conflicts in testimony or weigh the evidence. This does not assess credibility. The standard really is that set forth by the Supreme Court incited in the government's brief, whether the government's case was so lacking that it should not have been submitted to the jury. And in this case, with regards to the evidence, because the only element that's being challenged is the defendant's knowledge that he had a conviction punishable by more than one year. With regards to that element, Your Honor, the judgment, which we've already gone through and I won't go through again, specifically indicated that he was there and was advised of the maximum penalty. The single jail call offered... Why wouldn't it be important to indicate somewhere or to have a fact in the record that the defendant actually received or was made aware of the contents of the judgment? I certainly agree that if that happened, that would be more evidence that the defendant was aware that he had been convicted of a crime punishable by more than one year. And certainly more relevant if the defendant had not been present at his sentencing. But in this case, he was present. He was there. He was with counsel and advised of the maximum penalty in which he was subject to as a result of the conviction and then sentenced to four years custody with one suspended. In addition to that, Your Honor, with regards to the jail call that was offered by the United States during its case in chief, with regards to this particular case, the defendant says, I effed up. You know, I hope I beat it, though. And that's additional evidence that he understood that he was not permitted to have a firearm, that he had a prior felony conviction. And statements offered through the arresting officer where the defendant had indicated that he had spent time at the penitentiary. Certainly in this case, Your Honor, as set forth by this court in United States versus Spears, reversal is only warranted if no reasonable juror could find the defendant guilty of beyond a reasonable doubt. And viewing the evidence in this case, including all reasonable inferences in favor of the guilty verdict, a reasonable juror certainly could have found beyond a reasonable doubt, as they did unanimously, that the defendant was guilty of possession of a firearm by a prohibited person. The United States, Your Honor, would ask that the court affirm this conviction in all respects. Thank you. Thank you, Mr. Patterson. Mr. Rush, you have your button. Judge, the interesting game that's played now is that the prosecution in the United States has access to the jail phone calls and can sit in their office and listen to all of the jail phone calls that a defendant makes when prepared for trial, find one that essentially implicates them, order that up, and then they're required to provide it to the defense attorney. The defense attorney has no access to listen to all of these things, and often we find that at the time that you request them, those phone calls are no longer saved. So we don't have the ability to go back all the way through to the beginning of the case and look at what was said then, and we don't have access to sit and listen to jail phone calls. Counsel, what about the contents of this call, the length of the call, some features of the call that prevented his counsel from preparing for the admission or fighting the admission of the contents of the call? Now, I wasn't the underlying counsel, that was my experience. Well, I understand, I didn't assert it was you, but you're representing now that somehow there was an unfairness in admitting that, and I'm asking you to help me understand why there was insufficient time for, what was it, a less than a minute call to analyze the contents of it, discuss it with the client, and provide a response. When he says fucked up, that doesn't necessarily mean that he understood that he screwed up. You'd have to go back through all of his telephone calls from the beginning of time to see what he was saying. Did he say, I don't know, I didn't know I was a felon, I thought I wasn't a felon? To counteract that, you have to have immediate access to all of those phone calls. How many other calls were there? I don't know the total number, your honor. The most important part, I think, in this case is if you look at the wording in the actual text of Rehafe, the idea was this guy was a legal immigrant, and we just assumed, if you're an illegal immigrant, how could you not know that? And the Supreme Court says, well, he should be entitled to talk about his knowledge. And that's the same thing here. The only way that we get to talk about my client's knowledge is if the jury is instructed as to what happened to him. And although Alicia Fuller was not his public defender, she was the supervisor in the office at the time that this happened. So she certainly knew the procedures. She knew he didn't receive the judgment. She knew that he would have received the certificate of discharge. And at a bare minimum, the jury should be told and should understand that it is possible to take a plea but not be convicted of a felony in South Dakota. Not that it's just possible, that it happens nearly in all felony cases for the first felony. And if we're talking about a judgment which has the words suspended imposition, suspended execution, and then later that that is removed, bare minimum, the jury should know whether he received that judgment revoking that, what that means when it's revoked. And just because something's revoked, does that mean that it's permanently gone? Or can you do a motion for reconsideration and get that back as South Dakota has a motion for reconsideration of sentence? The United States keeps arguing that you can't have people testify about what the law is to provide legal opinions. But that wasn't the point. The point was to provide legal procedure, which is what Alicia Fuller quotes on, and what the procedures were in South Dakota. I think this is very similar to the Davies case. There was a complicated procedure that most people don't understand. I mean, quite honestly, don't understand. And when we want to analyze what his knowledge was and what was in his heart, at a bare minimum, he should be allowed to present to the jury what it was that he was told and what had happened procedurally. All right. Thank you, Mr. Rush. The court notes that you are representing your client today under the Criminal Justice Act, and we express our gratitude for your willingness to serve. Thank you. Thank you to both counsel for the arguments you provided to the court today, and we'll take the case under advisement and render a decision in due course. Counsel may be excused.